UNITED STATES of America,
Plaintiff–Appellee,

v.

Vaatausili Mark ALAIMALO,
Defendant–Appellant.

No. 00–15859.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 2002.

Filed Dec. 20, 2002.

Karon V. Johnson, Assistant United States Attorney, Hagatna, Guam, for the plaintiff-appellee.

Sarah Courageous, Honolulu, HI, for the defendant-appellant.

Before: SCHROEDER, Chief Judge, ALARCÓN and FISHER, Circuit Judges.

FISHER, Circuit Judge.

Vaatausili Mark Alaimalo ("Alaimalo") appeals the denial of his 28 U.S.C. § 2255 petition for a writ of habeas corpus. He contends that the failure of both his trial lawyer and his appellate lawyer to challenge the warrantless entry into his home as being without probable cause constituted ineffective assistance of counsel, in violation of the Sixth Amendment. Because we conclude that the officers had probable cause to believe that a package containing illegal drugs had been taken inside Alaimalo's home, we hold that Alaimalo did not receive ineffective assistance of counsel. We affirm the district court's denial of Alaimalo's habeas petition.

## I.

### Facts

Guam customs agents intercepted an express mail package containing more than 200 grams of methamphetamine when it arrived in Guam. The package was ad-

dressed to a Thomas Sablan at a postal box located in a private postal facility. U.S. and Guam customs agents decided to remove most of the methamphetamine, replace the drugs removed with pseudometh-amphetamine and conduct a controlled delivery of the package. When Sablan had rented the postal box, he had given 16A Salsa Street as his address. Customs agents and Guam police officers set up surveillance of Salsa Street and the postal facility.

On October 6, 1995, at about 12:10 p.m., officers observed Sablan as he took the package from the postal facility and got into a Toyota pickup truck. There was another man, later identified as Alaimalo, sitting in the passenger seat. (Although the officers knew of a man named Alaimalo who trafficked in drugs, they did not learn until the raid in this case that the man in the truck was Alaimalo and that he played a role in this particular shipment of drugs.) Together, Sablan and Alaimalo drove by a circuitous and irregular route for about 20 minutes until they arrived at a group of three houses located on Esther Lane in a remote area. The officers were surprised by this destination, having no previous knowledge that Sablan might go there rather than to the Salsa Street address.

Officers were unable to maintain a close surveillance of Sablan and Alaimalo once they drove into Esther Lane and entered one of the three closely situated houses on the road. Esther Lane was an unpaved dead-end road that was approachable only from one direction, and the houses backed onto a large jungle ("boonie"). The police officers could get no closer than 200 yards without giving away their position, could not determine which of the three houses Sablan and Alaimalo had entered and were not in a position to observe should the package be moved into the boonie or from one of the houses to another.

Shortly after Sablan and Alaimalo's arrival, someone drove another truck out of Esther Lane. The police stopped the truck, and discovered that the driver was the brother of someone (later determined to be Alaimalo) who lived on Esther Lane. After searching the truck and finding no drugs, the police released the brother. They were concerned, however, that he might call on his cellphone to warn Sablan or Alaimalo about the officers' presence, as the district court found in its suppression ruling. Moreover, according to one officer's testimony, it is common practice for drug traffickers to open packages of drugs within 10 minutes of reaching a place of apparent safety in order, among other things, to test the drugs or divide them up. Therefore, the officers were also concerned that given the roughly 15 minutes that had already elapsed since Sablan and Alaimalo's arrival at the house, there was a serious risk they would have opened the package and discovered the contents were sham, alerting them to the police surveillance and the risk of arrest—whether or not Alaimalo's brother tipped them off. Fearing that Sablan and Alaimalo might try to escape or destroy the package and its contents, the officers decided they needed to move quickly to secure the area and prevent the destruction of evidence pending their obtaining a search warrant.

The officers moved down Esther Lane toward the three houses, two of which had their doors closed. Sablan's pickup truck was parked in front of the third house (which turned out to be Alaimaio's home), the door of which was open but covered by a screen door. The officers could hear the sounds of video games coming from inside. The officers looked briefly inside Sablan's Toyota pickup but did not see the package of drugs. As they approached Alaimalo's house, the police announced their presence by shouting · "police, police." Sablan

opened the screen door. The police took him outside and then entered the house to conduct a protective sweep, to prevent the destruction of evidence and to insure the safety of the officers and others who might be present. Encountering a locked bedroom door inside the home, the officers knocked loudly and demanded entry. When the door was opened, the officers found Alaimalo inside with his wife and child. Alaimalo held a kitchen knife, which he eventually put down when ordered to do so. While securing the residence, the officers discovered in plain view the remnants of the parcel's packaging.

Handcuffed, advised of his rights and told that officers were in the process of obtaining a search warrant, Alaimalo decided to cooperate if the officers promised to "keep [his] family out of this." Eventually, Alaimalo consented to a search and agreed to cooperate. With Alaimalo's help, the officers found the methamphetamine from the parcel and additional methamphetamine from a previous shipment.

## II.

### Procedural History

Alaimalo was indicted and a jury convicted him on six methamphetamine trafficking counts. He was sentenced to life imprisonment on five of the counts and 360 months on another, the sentences to run concurrently.

Before Alaimalo's trial, his attorney, Lucy Brehm, moved to suppress evidence, arguing first that police and customs officers should have obtained arrest and search warrants prior to the controlled delivery. Brehm also argued that exigent circumstances did not justify the warrantless entry and arrest and that the subsequent search was therefore unlawful. Brehm did not argue that the officers

lacked probable cause to enter Alaimalo's home, however, and the court accepted that there was probable cause "as it [was] undisputed."

Alaimalo appealed his conviction and sentence. Richard Arens, his lawyer on appeal, challenged, among other things, the district court's denial of Alaimalo's motion to suppress. Although Arens did not raise the issue of probable cause in his brief, a panel of this court did consider the matter at oral argument. Ultimately, however, the panel decided to regard the probable cause argument as waived and to affirm the district court's other decisions, including the district court's finding that the officers' entry into Alaimalo's house and the protective sweep were justified by exigent circumstances.

Alaimalo filed pro se his 28 U.S.C. § 2255 habeas petition, which the district court rejected. Alaimalo appealed the court's order and requested a certificate of appealability, which the district court denied. Alaimalo appealed the order of denial, and a two-judge panel granted a certificate of appealability.

## III.

### Standards of Review

We review de novo the denial of a 28 U.S.C. § 2255 application for a writ of habeas corpus. *United States v. Day*, 285 F.3d 1167, 1169 (9th Cir.2002). We review for clear error the factual findings underlying the denial of a § 2255 motion. *United States v. Christakis*, 238 F.3d 1164, 1168 (9th Cir.2001). We review de novo the district court's determinations of whether a defendant received ineffective assistance of counsel, *id.*, and whether probable cause existed, *United States v. Rojas–Millan*, 234 F.3d 464, 468 (9th Cir. 2000).

## IV.

## Discussion

Alaimalo seeks a writ of habeas corpus under 28 U.S.C. § 2255. Under § 2255, a prisoner in custody under the sentence of a court established by Act of Congress can be released upon the ground, among others, that the court imposed the sentence in violation of the Constitution of the United States. Alaimalo is in custody under sentence of the federal District Court of Guam, a court established by an act of Congress. He claims he was denied his right to counsel in violation of the Constitution's Sixth Amendment.

■■■ To show a deprivation of the Sixth Amendment right to counsel, Alaimalo must establish both that his lawyer's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mancuso v. Olivarez*, 292 F.3d 939, 953–54 (9th Cir.2002). A "deficient" performance is one that is not reasonably effective, where an objective standard guides judgments of reasonableness. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. To satisfy *Strickland's* first prong, the acts or omissions must fall "outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. 2052; the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, 104 S.Ct. 2052. A deficient performance prejudices a defense if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id. Strickland's* second prong thus "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052.

We reject Alaimalo's argument that he was deprived of effective assistance of counsel. Alaimalo argues that before the officers could constitutionally enter his home without a warrant, whether or not exigent circumstances existed, the officers needed probable cause to believe that the drug package was in his home. Because the officers lacked such probable cause, the entry was illegal and all evidence resulting from it should have been excluded. Because Alaimalo's lawyers failed to raise the issue of probable cause, they provided constitutionally ineffective assistance of counsel. Although we agree that the officers had to have probable cause to believe the package was in his home, we disagree with Alaimalo's premise that they lacked such probable cause. Thus his counsel were not deficient in failing to raise the probable cause issue; in any event, he was not prejudiced by their failure to do so.

■■ We note first that the officers entered Alaimalo's home not to *search* for the package of drugs, but to secure the premises temporarily, to prevent the destruction of evidence while they applied for a warrant and to insure the safety of others on the scene and of themselves while awaiting the warrant.[1] Even without a warrant, police may sometimes enter a home to secure it when exigent circumstances exist. "[E]xigent circumstances are present when a reasonable person[would] believe that entry . . . was necessary to prevent physical harm to the

---

1. "The securing of a residence by police is a *seizure* subject to fourth amendment protection." *United States v. Lindsey*, 877 F.2d 777, 780 (9th Cir.1989) (emphasis added). After securing the home, the officers properly applied for a search warrant.

officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Bailey v. Newland,* 263 F.3d 1022, 1033 (9th Cir.2001) (quotation marks and citations omitted) (second alteration in the original). Alaimalo's trial and appellate lawyers did argue (albeit unsuccessfully) that exigent circumstances to justify the warrantless entry did not exist. Alaimalo contends, however, that his lawyers also should have challenged the existence of probable cause to believe that the package was in his home in the first place, because absent such probable cause, exigent circumstances would have become irrelevant.

 Even when exigent circumstances exist, police officers must have probable cause to support a warrantless entry into a home. *See LaLonde v. County of Riverside,* 204 F.3d 947, 954 (9th Cir.2000); *see also Murdock v. Stout,* 54 F.3d 1437, 1441 (9th Cir.1995). Probable cause requires only a fair probability or substantial chance of criminal activity, and we determine the existence of probable cause by looking at "the totality of the circumstances known to the officers at the time." *United States v. Bishop,* 264 F.3d 919, 924 (9th Cir.2001) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). In a case involving the securing of a residence believed to contain evidence of drug trafficking as well as guns and bombs that posed a threat to arresting officers and neighbors, we explained that we had to "make a 'practical, common-sense decision' whether under the 'totality of the circumstances' known to the police officers at the time they entered [the] home, there was a 'fair probability' that contraband or evidence of a crime would be found inside." *Lindsey,* 877 F.2d at 780 (quoting *Gates,* 462 U.S. at 238, 103

S.Ct. 2317). Here, after looking at the totality of the circumstances, we must make a practical, common-sense decision about whether there was a fair probability that the drug package was inside Alaimalo's home.

 As the district court properly found in denying Alaimalo's habeas petition, there was a fair probability that the drug package was inside his house. Officers had seen Sablan pick up the package. They had also seen him and Alaimalo drive by a circuitous route to Esther Lane, typical behavior of drug dealers who wish not to be followed, thereby giving the officers additional reason to believe that Sablan knew that the package contained illegal drugs. Based on their experience, the officers believed that drug traffickers generally open packages of drugs shortly after reaching a place of apparent safety. Therefore, it was unlikely that the drugs would have been dropped off and left unattended in the boonie. It was for the same reason unlikely that the drugs would have been left unattended in the Toyota; in any event, before entering Alaimalo's home, the officers looked inside the pickup truck and did not see the package there. Although there were three houses on Esther Lane into which Sablan could have taken the drug package, the front doors of two were closed. Alaimalo's was the only home with an open front door and signs of activity, and it was the one in front of which Sablan had parked the truck. Finally and significantly, Sablan appeared at the screen door. The totality of these circumstances gave the officers probable cause to believe that the package was inside Alaimalo's home.

## V.

### Conclusion

Officers entered Alaimalo's home to secure it, to prevent the destruction of evi-

**1194**

dence and to protect themselves and others on the scene. To do so, they needed probable cause to believe that the package of drugs was in Alaimalo's home. We reject Alaimalo's contention that the officers lacked probable cause to believe that the drugs were in Alaimalo's home. Therefore, we reject Alaimalo's contention that his lawyers' failure to challenge probable cause deprived him of the effective assistance of counsel that the Sixth Amendment guarantees. Therefore, we affirm the district court's denial of Alaimalo's 28 U.S.C. § 2255 petition for a writ of habeas corpus.

**AFFIRMED.**