UNITED STATES of America,
Plaintiff–Appellee,

v.

Guy Christopher BROOKS,
Defendant–Appellant.

No. 02–50539.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 1, 2004.

Filed May 13, 2004.

Monica Knox (argued) and Angel K. Leung, Deputy Federal Public Defenders, Los Angeles, CA, for the defendant-appellant.

Douglas F. McCormick, Assistant United States Attorney, Santa Ana, CA, for the plaintiff-appellee.

Before: SILVERMAN, GOULD, and BEA, Circuit Judges.

GOULD, Circuit Judge:

Defendant–Appellant Guy Christopher Brooks, convicted in the district court on three counts of bank robbery, challenges the admission of incriminating evidence that police seized in a search of his hotel room made without a warrant. We consider whether the district court committed reversible error by denying Appellant's pretrial motion to suppress the evidence where that search was prompted by a "911" emergency phone call to the police from a hotel guest, staying in an adjacent room, who thought that she had heard the sounds of a woman being beaten. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

On February 2, 2002, Appellant Brooks and Sharon Andrea Bengis ("Bengis")—who had been living together for almost three weeks in room # 301 of the Extended Stay America hotel in Lake Forest, California—were breaking up their relationship. It is not disputed that they were at least engaged in an argument so loud that it commanded the attention of a neighboring hotel guest. The guest next door in room # 303 called the police and reported hearing what she thought were sounds of a woman being beaten in room # 301. Deputy Sheriff Marcus Perez ("Perez") arrived on the scene. After Perez met in the hotel lobby with the guest who placed the 911 call, Perez went to room # 301 and knocked on the door. He heard Brooks say, "Honey, I think somebody is here."

When Brooks opened the door, Perez identified himself. Perez told Brooks that Perez was there because he received an emergency call about a domestic disturbance. Brooks said, "I knew you were coming. She was very loud." Perez noticed that the room was, in his words, in "total disarray;" the hotel bed was unmade and clothes were strewn over the floor. Perez asked whether there was a female in the room. Brooks told him that a woman was in the bathroom, probably taking a shower. Perez asked to speak with her, and Brooks turned around toward the bathroom to ask Bengis to come out and speak to the officer. Brooks testified that he did not close the hotel room door, but that it began to close automatically. Brooks was not aware whether the door closed completely.

When Brooks turned to face the officer, he noticed that Perez had entered the hotel room. There is no evidence that Brooks ever asked Perez to wait outside, or to leave the room once he had entered. At the time he entered the room, Perez had not yet confirmed whether the woman involved in the dispute was hurt and needed his help, nor had Perez determined whether the fighting might continue. In any event, as the issues are presented by the parties, it is not disputed that Perez did not receive formal or informal consent to enter the room.

Upon entering the hotel room and going to the kitchen area, Perez heard Bengis crying in the bathroom. Perez asked Brooks to sit on a chair in the kitchen area and tell him what had happened. Brooks told the officer that he and Bengis had gotten into a verbal argument. Bengis then came out of the bathroom. Perez did not see signs of a physical assault, but he noticed that Bengis was still crying.

Perez asked Bengis several times whether she was hurt or had been assaulted, and Bengis each time said that she had not been injured. Perez asked whether she needed assistance, and she declined help. Perez asked Brooks and Bengis for proof of identification. Brooks denied having any, and gave a false name. Bengis showed Perez her California driver's license.

The plot thickened when Perez asked Brooks and Bengis whether they had anything illegal in the room. Brooks admitted to having marijuana in the top drawer of the dresser, but said that Bengis did not know about it. Perez then asked for permission to search for marijuana, and Brooks and Bengis both assented: "Yes, go ahead." Brooks confirmed in his own declaration that he told Perez he had some marijuana, and Brooks gave Perez permission to search for the marijuana.

Soon thereafter, Perez noticed a man's wallet on top of the dresser where Brooks said the marijuana was located. He picked up the wallet, looked inside it, saw Brooks's driver's license, and then knew that Brooks had lied about his identity. When Perez visibly removed Brooks's driver's license from the wallet, Brooks bowed his head and sighed. On Perez's immediate inquiry, Brooks then admitted that he had given Perez a false name. Brooks also said that he was on parole for bank robbery in Oregon and had absconded from parole. Next, Perez handcuffed Brooks, and conducted a records check.

Perez learned that there was an active warrant out from the United States Marshal's service for Brooks's arrest.

At that time, Perez realized that Brooks fit the description of a bank robber in a matter on which Perez had worked the previous month. Perez began to search the room and discovered two tennis rackets in cases, and one of the cases contained $3,000 in a zippered baggie. Without advising Brooks of his *Miranda* rights, Perez asked Brooks about the tennis rackets and about the money found inside one of the cases; Brooks admitted that the tennis rackets and the money were his. Brooks also said that the money belonged only to him, not to Bengis, and that only he and Bengis had access to the hotel room.

Brooks was indicted on February 27, 2002, in the United States District Court for the Central District of California, and charged with three counts of bank robbery in violation of 18 U.S.C. § 2113(a). On March 29, 2002, Brooks filed a pretrial motion to suppress all evidence seized by law enforcement officers from his hotel room, as well as the "fruits" of such evidence. The district court held a hearing on Brooks's suppression motion and issued a written ruling on April 18, 2002. The district court granted Brooks's unopposed motion to suppress the incriminating statements Brooks had made before receiving *Miranda* warnings but denied the motion to suppress the physical evidence found in the challenged search of Brooks's hotel room.

The district court concluded that a "potential domestic violence assault in this case justified Deputy Perez's warrantless entry." Specifically, the court held that there was "probable cause" as a result of the combination of the hotel guest's emergency call to the police, the signs of disturbance in the room, and the sounds of a woman crying in the bathroom. And the

court held that Perez's warrantless entry was justified by "exigent circumstances" because "domestic violence might have endangered the physical safety of the potential victim." [1]

The district court also held that Perez did not violate Brooks's Fourth Amendment rights by staying in the room to ask follow-up questions after Bengis told him that she did not need assistance and was not harmed. The court concluded that Perez was authorized to stay in the room for a "few minutes" to "[e]nsure that the situation was as secure as Bengis suggested" and "to obtain identification of the principals in the matter." Regarding Perez's search of Brooks's wallet, the district court held that Brooks had given consent to search for marijuana, and that an objectively reasonable person could have searched—as Perez did—in Brooks's wallet. [2]

The case went to trial on April 23, 2002. The cash and the items of clothing seized by Perez were introduced at the jury trial. Two days later, Brooks was convicted by a jury of bank robbery.

## II

■ Brooks challenges the district court's rulings denying his motion to suppress, and contends that the district court erred in concluding that the search was justified by probable cause, and that exigent circumstances excused Perez's warrantless entry into Brooks's hotel room. Also, Brooks contends that even if the warrantless search was permissible at the outset, Perez had to stop the search and leave the room after Bengis said that she was fine and did not need help. Brooks further contends that Perez's questioning about illegal items lay outside the scope of any exigency that prompted his entry. Finally, Brooks argues that his consent to Perez's search of the hotel room for marijuana, after entry, was tainted by prior Fourth Amendment violations. [3]

## III

### A

■ Brooks argues that Perez's warrantless entry into the hotel room violated his rights under the Fourth Amendment of the U.S. Constitution, which states:

1. As an alternative holding, the district court reasoned that if Perez had asked Bengis to exit the room to talk with him in the hallway, "the same investigation would have taken place, with Perez remembering Bengis from their previous encounter, questioning her about illegal goods, and Brooks finally admitting to possession of marijuana.... Furthermore, it is undisputed that Deputy Perez was authorized to stop Brooks and investigate the report of domestic violence. Thus, whether the encounter took place in the Room or the hallway outside, the evidence would still have been uncovered."

2. As a further alternative holding based on "inevitable discovery," *see Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the court *sua sponte* reasoned that even if it were to find that Perez's search of Brooks's wallet

was outside the scope of consent, it is clear that the evidence that Defendant seeks to suppress would have been discovered through lawful means.... Once Brooks admitted to being in possession of marijuana, he was immediately subject to arrest. The searches that followed his arrest would still have occurred and the evidence seized by the officers would still have been located. Thus, even if Brooks had denied consent, the evidence would have been lawfully discovered.

3. We review de novo legal determinations by the district court supporting its denial of Brooks's motion to suppress, and we review for clear error the district court's determination of facts underlying its decision. *United States v. Kemmish,* 120 F.3d 937, 939 (9th Cir.1997).

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Supreme Court has suggested that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (quoting *United States v. United States Dist. Ct.*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)).[4]

■ As a general rule, to satisfy the Fourth Amendment a search of a home must be supported by probable cause, *and* there must be a warrant authorizing the search. *Nathanson v. United States*, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933) ("Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause[.]"). The Fourth Amendment states that warrants shall not issue except upon a showing of "probable cause." Even when probable cause is shown, a warrantless search will normally be invalid unless there are "exigent cir-

cumstances" that justify proceeding without a warrant.[5] Stated another way, there are two means by which a search normally may be justified as reasonable under the Fourth Amendment: One is where the search has been pre-sanctioned by a judicial officer upon a finding of probable cause for the search; the other is where, despite the absence of a warrant approving a specific search, there is not only probable cause for the search, but also "exigent circumstances" sufficient to justify law enforcement officers to forego obtaining a warrant. *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002); *United States v. Johnson*, 256 F.3d 895, 905 (9th Cir.2001) (en banc). *See also Ortiz–Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir.2003) (noting that we have "recogniz[ed] the unassailable premise that warrantless arrests in the home are prohibited by the Fourth Amendment absent probable cause and exigent circumstances."). Brooks challenges the officer's entry under both requisite prongs—probable cause and exigent circumstances.

**1**

■ Cases on "probable cause" are legion, and involve a close scrutiny of the facts supporting a law officer's belief that evidence of crime can be found in the place of search. Under our traditional rule,

---

**4.** An individual in his or her hotel room has the same Fourth Amendment protections as he or she has in a home. *Bailey v. Newland*, 263 F.3d 1022, 1029 (9th Cir.2001).

**5.** As the Supreme Court explained in *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specially established and well-delineated exceptions." *See also Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (noting that "only a few ... emergency conditions" justify

warrantless entry). The exceptions to the warrant requirement, sometimes described under the rubric of "exigent circumstances," include the need to protect an officer or the public from danger, *United States v. McConney*, 728 F.2d 1195 (9th Cir.1984) (en banc), the need to avoid the imminent destruction of evidence, *Welsh*, 466 U.S. at 750, 104 S.Ct. 2091, when entry in "hot pursuit" is necessary to prevent a criminal suspect's escape, *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and to respond to fires or other emergencies, *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978).

probable cause exists when there is "a fair probability or substantial chance of criminal activity." *United States v. Alaimalo,* 313 F.3d 1188, 1193 (9th Cir.2002). We look at the total circumstances known to the officer to determine whether probable cause existed. *Id.* Let us see what Perez knew.

■ Perez had been alerted to the possibility that a woman in Brooks's room was being beaten, a serious danger; the hotel guest staying in the adjacent room had perceived an emergency and called 911 because she was alarmed by what she had overheard. When Perez arrived at the hotel, he spoke with this concerned guest in the lobby, and had the opportunity to assess her credibility. When Perez knocked on Brooks's hotel room door, the tale told by the guest was, to a degree, corroborated. Perez heard Brooks say, "Honey, I think somebody is here," likely indicating to Perez that a woman was inside. When Brooks opened the door, Perez did not see a woman, but Brooks told Perez, "I knew you were coming. She was very loud." Brooks thereby confirmed to Perez both that a woman was present, and that there had been, at the least, a loud argument.

■ Perez could not have been certain that a woman had been beaten, but probable cause does not require a certainty, only a fair probability or a substantial chance that criminal activity took place. *See Murdock v. Stout,* 54 F.3d 1437, 1441 (9th Cir.1995). We conclude that Perez had cause to know that Brooks and Bengis had argued and in the total circumstances there was a "fair probability or substantial chance" that an assault had occurred. *Alaimalo,* 313 F.3d at 1193.[6] It is of no moment that Perez later found no definite evidence of physical abuse, and that Bengis disclaimed injury. Before Perez walked into the hotel room, the expressed concerns of the guest next door, corroborated by Brooks's statements and the facts observed by Perez, gave probable cause for his entry.[7]

**6.** Because "[i]t is well-settled that the determination of probable cause is based upon the totality of the circumstances known to the officers *at the time of the search,*" *United States v. Soriano,* 361 F.3d 494, 505 (9th Cir.2004) (internal quotation marks omitted) (emphasis added), the district court's probable cause analysis was flawed to the extent that it considered that Perez heard Bengis crying. Perez heard Bengis crying only *after* he entered without permission, and so the district court should not have given weight to this fact to justify the entry. *See United States v. Scott,* 520 F.2d 697, 700 (9th Cir.1975) ("The question ... is whether the officers ... had, *at the time of entry,* probable cause to believe that the fugitives they sought were there[.]") (emphasis added). Based on the evidence already summarized, however, we conclude on de novo review that there was probable cause for Perez to think that a crime had been committed, even before he saw that Bengis was crying. That she was upset gave cause to stay and question longer, but not to enter.

**7.** Brooks contends that this case is controlled by *Hopkins v. City of Sierra Vista,* 931 F.2d 524 (9th Cir.1991). There, we reversed a summary judgment for an officer in a civil rights action under 42 U.S.C. § 1983. From an anonymous tip, officers were told that a woman in an apartment was being beaten for hours. The officer who arrived on the scene heard sounds of a card game, and possibly an argument, but no sounds of a woman seeking help. Hopkins opened the door, and the officer noticed alcohol on his breath. The officer knew that Hopkins had previously been violent with his wife. The officer entered. The district court in *Hopkins* held as a matter of law that the officer had probable cause to make the warrantless entry. We reversed because a genuine issue of fact existed about what the officer had heard on the scene. We did not conclude in *Hopkins* that no probable cause existed for the warrantless entry, but held only that the district court erred in making this decision on summary judgment without a hearing to resolve the facts. By contrast, here there was an evidentiary hearing on Brooks's motion to suppress; the salient facts about the warrantless entry are not in

## 2

That Perez had probable cause to enter does not end the inquiry, for normally police even with probable cause must gain a warrant before searching a home. We must consider whether Perez's entry fell within an exception to the warrant requirement. *See Warden v. Hayden,* 387 U.S. 294, 298, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (upholding a warrantless search where "the exigencies of the situation made that course imperative.")

■ As a general rule, "we define exigent circumstances as those circumstances that would cause a reasonable person to believe that entry … was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. McConney,* 728 F.2d 1195, 1199 (9th Cir.1984) (en banc). *See also Ortiz–Sandoval,* 323 F.3d at 1170; *United States v. Richardson,* 208 F.3d 626, 629 (7th Cir.2000). The issue before us is whether the 911 call alerting police to a perceived domestic abuse and the corroborating facts known to Perez disclosed dangers creating an exigency that justified entry into Brooks's hotel room without a warrant.

■ Many of the same facts that showed probable cause to suspect evidence of crime are also relevant to show Perez's exigent need to enter. Police received an emergency call for aid. Perez talked to the hotel guest who feared an assault was occurring in Brooks's room,[8] and Perez confirmed by Brooks's statement that a woman was in the room. When Brooks opened the door, he admitted that the woman had been "loud." Perez saw the hotel room in disarray. No woman was in sight. Perez's entering the room was justified by an objectively reasonable belief that a woman might be injured and entry was "necessary to prevent physical harm" to her. *United States v. George,* 883 F.2d 1407, 1412 (9th Cir.1989) (quoting *United States v. McConney,* 728 F.2d 1195, 1199 (9th Cir.1984) (en banc)).

Brooks argues that Perez, rather than enter the hotel room without consent, could have asked Bengis to join him in the hallway so that he might there assess the safety risks involved. Brooks contends that such a course of action would have minimized the need for the additional intrusion of the warrantless entry. We reject this argument. The Supreme Court

---

dispute, and Brooks does not allege that the district court's findings of fact were clearly erroneous.

Second, *Hopkins* was a § 1983 case. As we said in *McKenzie v. Lamb,* 738 F.2d 1005, 1007–1008 (9th Cir.1984):

> Our task in determining whether probable cause to arrest existed as a matter of law in this § 1983 action is slightly different from a similar determination in the context of a direct review of a criminal arrest. In the latter situation, we are called upon to review both law and fact and to draw the line as to what is and is not reasonable behavior.… By contrast, in a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury.

**8.** It is noteworthy that the hotel guest who placed the emergency call to the police was interviewed by Perez in the hotel lobby. Brooks's reliance on *United States v. Davis,* 290 F.3d 1239 (10th Cir.2002), is misplaced. In *Davis,* the police conducted a warrantless search after receiving a vague and anonymous call about a domestic dispute; there were no corroborating facts in *Davis,* as were presented here, suggesting that anyone was in danger. The Tenth Circuit affirmed the district court's decision to suppress evidence because there were no exigent circumstances. This case differs because the officer had more information showing cause to think that a woman may have been beaten and that an exigency required entry because of continuing danger to her.

has "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment." *Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 663, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (citing *Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602, 629 n. 9, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (collecting cases for this proposition)). As for Brooks's argument that police should have been satisfied by interviewing Bengis in the hallway, such a method might have been attempted, but was not constitutionally required. A hallway interview would not necessarily have been effective to protect Bengis in this context because it would not have addressed sufficiently the exigency with which Perez was confronted. Considering the tendency of victims of domestic abuse to be less than forthcoming about the harms to which they were or will likely be exposed at the hands of an aggressor who remains on the scene, Perez was entitled to search inside the hotel room, which in the total circumstances was an objectively reasonable way to address the exigency. *Mincey v. Arizona,* 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (noting that a warrantless search must be "objectively reasonable.")

▆ Our holding here is anchored by Perez's legitimate concern for the safety of a woman reported to be in danger of domestic abuse. As the Supreme Court has noted, "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Id.* at 392, 98 S.Ct. 2408. In Brooks's case, the district court concluded that, "such a case of domestic violence might have endangered the physical safety of the potential victim." (citing *Murdock,* 54 F.3d at 1440). We conclude that the district court did not err in this assessment. Two other circuits have even held that a 911 call reporting a

domestic emergency, without more, may be enough to support a warrantless search of a home. *See, e.g., United States v. Richardson,* 208 F.3d 626, 630 (7th Cir. 2000) (determining that a 911 call where the caller identified himself and stated that the body of a woman who had been raped and murdered could be found in the basement of a particular address was enough to support a warrantless search under the exigent circumstances exception); *United States v. Cunningham,* 133 F.3d 1070, 1072–73 (8th Cir.1998) (holding that a 911 call from a woman who identified herself and claimed that she was being held against her will justified protective sweep of dwelling).

These cases properly speak to the legitimate concern that the exigencies of domestic abuse cases present dangers that, in an appropriate case, may override considerations of privacy. In *Tierney v. Davidson,* 133 F.3d 189 (2d Cir.1998), the Second Circuit said, "Courts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger." *Id.* at 197. We do not suggest that domestic abuse cases create a per se exigent need for warrantless entry; rather, we must assess the total circumstances, presented to the law officer before a search, to determine if exigent circumstances relieved the officer of the customary need for a prior warrant. *See Idaho v. Wiedenheft,* 136 Idaho 14, 27 P.3d 873, 875 (Ct.App.2001) ("A report of domestic violence does not *per se* amount to exigent circumstances.")

Given the facts determined in the district court, and not here fairly disputed, we hold that it was objectively reasonable for Perez to believe that Bengis might have been in danger, and this exigency ren-

dered lawful his entry without a warrant to come to her aid if there was need.[9]

**B**

■ Brooks contends that even if there were probable cause and exigent circumstances to justify Perez's warrantless entry, once Perez heard from Bengis that she was unharmed, the exigency dissipated and Perez, by staying to question longer, violated Brooks's Fourth Amendment rights. Brooks stresses that after Bengis declined assistance, Perez improperly remained in the room and asked questions that Brooks contends were not related to the domestic disturbance investigation.

We disagree. In Perez's experience, as he testified in the district court, it was "very common" for victims of domestic abuse initially to deny that they had been assaulted. This view could be credited by the district court. We, too, agree that a victim of domestic violence may deny an assault, especially when an abuser is present. Perez's decision to stay and ask more questions was a reasonable police procedure. A potential victim in Bengis's situation with justification may fear that by complaining to police, he or she might expose himself or herself to likely future harm at the hands of a hostile aggressor who may remain unrestrained by the law.

*See, e.g.,* Rhonda L. Kohler, *The Battered Women and Tort Law: A New Approach to Fighting Domestic Violence,* 25 Loy. L.A. L.Rev. 1025, 1026–27 (1992) ("Many women do not report instances of abuse because they are afraid to call the police or seek assistance out of cultural, family or religious pressure, fear of retaliation, or lack of protection by the police. Some women do not even identify themselves as being battered."). *See also Fletcher v. Town of Clinton,* 196 F.3d 41, 52 (1st Cir.1999) ("In domestic violence situations, officers may reasonably consider whether the victim [in denying she or he is in danger] is acting out of fear or intimidation, or out of some desire to protect the abuser, both common syndromes."); *United States v. Lawrence,* 236 F.Supp.2d 953, 963 (D.Neb.2002) ("Even when the possible victim of domestic abuse assures the officer that she is in no danger, an officer is entitled to consider all the facts and is not required to take her statement at face value in assessing the potential threat of physical harm."). Perez, mindful that Bengis might not have been forthcoming when he asked her about her safety, remained in the hotel room, after Bengis disclaimed harm, to ask more questions. We hold that it was proper for him to have done so.[10]

---

**9.** Because we hold that the warrantless entry into the hotel room did not violate Brooks's Fourth Amendment rights, we do not reach the district court's alternative holding, that if Perez had required Bengis and Brooks to exit the room, the same investigation—bearing the same fruits—would have taken place.

**10.** We consider inapposite Brooks's reliance on a traffic stop case, *United States v. Chavez-Valenzuela,* 268 F.3d 719 (9th Cir.2001), *amended by* 279 F.3d 1062 (9th Cir.2002). There, the police stopped the driver of a vehicle for a routine traffic violation. The officer then asked the driver about matters unrelated to the traffic stop and obtained consent to search the car. We held in *Chavez* that "nervousness during a traffic stop … in the ab-

sence of other particularized, objective factors, does not support a reasonable suspicion of criminal activity, and does not justify an officer's continued detention of a suspect after he has satisfied the purpose of the stop." *Id.* at 726. By contrast, here, Perez's line of questioning related to the purpose of his visit. He asked about the presence of any illegal items, which he thought might include weapons. Bengis was crying, the room was in disarray, and Brooks and Bengis had argued. Perez was justified in asking questions to ascertain the safety risks to which Brooks or Bengis might be subjected. The district court's factual determination that the further questions were aimed at alleviating safety risks was not clearly erroneous, nor an error of law.

## C

■ Brooks also contends that, if the concern was domestic violence, it was not proper for Perez to ask whether any illegal items were in the hotel room. Relying on *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), Brooks argues that Perez's questioning was not circumscribed by the exigency that justified the entry and promoted a "suspicionless fishing expedition."

We reject this contention, and agree with the district court's analysis that the holding in *Mincey* is not applicable to Brooks's case. *Mincey* involved an improper four-day warrantless search of an apartment conducted during the course of a homicide investigation. The Supreme Court held that:

> it simply cannot be contended that this search was justified by any emergency threatening life or limb. All the persons in Mincey's apartment had been located before the investigating homicide officers arrived there and began their search. And a four-day search that included opening dresser drawers and ripping up carpets can hardly be rationalized in terms of the legitimate concerns that justify an emergency search.

*Id.* at 393, 98 S.Ct. 2408.

By contrast, Perez's questioning was related to the exigency that prompted him to the scene. Perez explained that he was concerned that weapons, if present, could be used to harm either party. In the context of a domestic violence dispute, it is entirely appropriate for police to make inquiries designed to elicit information about any weapons that might be used by the disputants against each other, or even against the officer. We hold that such questions are fairly within the scope of the exigency that created the need for the warrantless search.

## D

Brooks last contends that the consent he gave Perez to search for illegal items was tainted by (a) the prior warrantless entry; (b) Perez's continued questioning after Bengis said that she was not harmed; and (c) Perez's specific questioning about illegal items, which Brooks argues to be unrelated to the exigency prompting Perez's entry. *See United States v. Oaxaca*, 233 F.3d 1154, 1158 (9th Cir.2000) ("Consent by a defendant or a third party is tainted where the evidence indicates that it stemmed from the prior illegal Government action."). Because we have determined that Perez's warrantless entry was lawful, that staying to ask more questions was proper under the circumstances, and that Perez's inquiry about illegal items addressed a legitimate safety concern, we hold that Brooks's consent to search was untainted by any previous violation.[11]

## E

After Perez picked up the wallet lying on top of the dresser and learned Brooks's

---

11. Brooks did not in his opening brief raise any argument regarding the scope of Perez's consensual search for marijuana, so we need not reach the question whether Perez properly searched Brooks's wallet after obtaining permission to search for marijuana. *Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir.1988) ("It is well established in this Circuit that claims which are not addressed in the appellant's brief are deemed abandoned.") We note only that once Brooks volunteered that he had marijuana, it was entirely appropriate for Perez to ask if he could search for the illegal item. Further, because any issue about the scope of the search is waived, we need not address whether, seeing a wallet in plain view, and having been told by Brooks that he had no formal proof of identification, Perez was justified in looking inside the wallet as part of his reasonable investigation.

true identity, Brooks told Perez that he had absconded from parole in Oregon. Perez cuffed Brooks and discovered from the records check that a warrant was out for Brooks's arrest. Apart from the arguments that we have already considered and rejected, Brooks does not further challenge Perez's subsequent and broader search of Brooks's room, which yielded items of physical evidence that were introduced at Brooks's trial for bank robbery.

## IV

We hold that Perez entered Brooks's room with the requisite probable cause to search for evidence of crime, and that exigent circumstances permitted the warrantless entry. We further hold that Perez remained in the hotel room for a proper period to ask questions about the exigency; that the questions he asked were legitimate in light of Perez's concerns that domestic abuse threatened the safety of a woman in Brooks's hotel room; and that Perez received untainted consent to search the room for marijuana. This consensual search led to the discovery of Brooks's identity and thereby to his arrest. Perez's seizure of the items in Brooks's hotel room was not tainted by any prior unconstitutional conduct, and the district court did not err in denying Brooks's motion to suppress the physical evidence seized from Brooks's room and introduced at trial.[12]

**AFFIRMED.**

---

**12.** Brooks challenges the district court's *sua sponte* application of the inevitable discovery doctrine. We do not reach this issue in light of our affirmance of the district court's judgment that the warrantless entry, the ensuing period of questioning, and the consensual search of the room were proper.