**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-10023 |
| Plaintiff - Appellee, | D.C. No. 2:12-cr-00326-MCE-1 |
| v. | |
| JOHN WINTON HARRIS, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted January 8, 2016
San Francisco, California

Before: WALLACE, NOONAN, and BERZON, Circuit Judges.

Appellant John Harris challenges his conviction for the possession of

cocaine with intent to sell on the grounds that the police obtained the evidence used

against him at trial during two unconstitutional searches of his wife's apartment.

We hold that the first search was unconstitutional. We remand to the district court

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

for a determination as to whether evidence obtained during the second search satisfies an exception to the fruit of the poisonous tree doctrine.

## I.

The police's first search took place following a 911 call reporting an incident of domestic violence between a man and a woman at an apartment complex. Two police officers, responding to the call, knocked on the apartment door. A woman, later identified as Harris' wife, answered the door. The police entered without asking for permission or asking whether she was in danger or had been harmed. Harris was also in the apartment at the time, and walked from the kitchen towards the entrance upon the police's entry. The police subsequently conducted a brief protective sweep to determine if any other individuals were in the apartment. There were not. The police then asked Harris questions about his name, probation or parole status, and whether a domestic assault had occurred. Based on his behavior while responding, the police placed Harris in handcuffs in the living room. One of the officers then conducted a second sweep of the kitchen, during which he found cocaine in plain view.

The government argues that although the police officers' initial entry and search during which they found the cocaine were conducted without a warrant, they were justified by the emergency and exigency exceptions. In order for these

exceptions to apply, the government must demonstrate either that there was "a medical emergency or other immediate risk to life or limb" demanding their entry, *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009), or that there were "circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. Brooks*, 367 F.3d 1128, 1135 (9th Cir. 2004) (quoting *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc)). The scope of any search following a warrantless entry must be "reasonable to meet the need" of the exigent or emergency circumstances. *United States v. Snipe*, 515 F.3d 947, 952-54 (9th Cir. 2008).

Domestic violence cases do not "create a *per se* exigent need for warrantless entry." *Brooks*, 367 F.3d at 1136. In the context of 911 calls reporting incidents of domestic violence, this court has upheld warrantless searches under the exigency and emergency exceptions where the police cannot see the victim and have reason to believe that he or she is in the home and potentially in danger. *See United States v. Black*, 482 F.3d 1035, 1039 (9th Cir. 2007); *Brooks*, 367 F.3d at 1135-38; *cf. United States v. Martinez*, 406 F. 3d 1160, 1163-64 (9th Cir. 2005); *cf. United*

3

*States v. Davis*, 290 F.3d 1239, 1243 (10th Cir. 2002). An officer's conjecture about the possibility of future harm is insufficient to establish exigent or emergency circumstances. *See United States v. Struckman*, 603 F.3d 731, 744 (9th Cir. 2010). Rather, in order to justify a search on these grounds the officer must point to specific and articulable facts demonstrating that harm is imminent. *Id*. at 743.

Harris' wife answered the door and was within the sight of the police. She was unharmed and displayed no signs of being in distress. There were no specific or articulable facts demonstrating that she was in imminent danger. *See id*. The only material fact of which the police officers were aware at the time she answered the door was that 911 had been called about a domestic violence incident. This fact alone is insufficient to support a finding of exigent or emergency circumstances on the basis that Harris' wife may have been in danger at that moment or could potentially be in danger in the immediate future. *Brooks*, 367 F.3d at 1136; *see Struckman*, 603 F.3d at 743-44. The police's initial entry into the apartment was consequently in violation of the Fourth Amendment.

The scope of the police's second search of the kitchen after they entered the apartment also violated the Fourth Amendment because it was not "reasonable to meet the need" of protecting the officers or others from immediate harm. *Snipe*,

515 F.3d at 952. The government contends that the second sweep of the kitchen was reasonably conducted to protect the officers and Harris' wife from harm. The government argues that the officer who searched the kitchen reasonably believed that Harris may have placed a gun there, because upon entering the apartment, the officers heard a loud thud coming from the kitchen and saw Harris crouching by stove, and because Harris refused to answer the officers' questions.

By the time the kitchen was searched, however, the officers had already swept the entire apartment, including the kitchen, and therefore ostensibly had concluded there were no weapons in any readily apparent place in the kitchen. Moreover, the report that led to the entry into the apartment did not state that Harris or his wife had a gun or other weapon, and the officers had no other information indicating that the apartment harbored a gun. In addition, by the time of the second kitchen search, Harris was in handcuffs, and Harris and his wife were in the living room with another officer. Any gun in the kitchen was therefore not within their reach.

In short, once the officers told Harris and his wife to stand in the living room, swept the entire apartment, and placed Harris in handcuffs, there was no longer an objectively reasonable basis to conclude that the officers or Harris' wife were in immediate need of protection. At that point, it was not reasonable to

conduct a second search of the kitchen and the district court's finding to the contrary was clearly erroneous.

## II.

Following the police's initial unconstitutional entry and protective sweep of the apartment during which they found cocaine, one of the police officers placed Harris in the parole car and conducted a records check. This check, consistent with the information Harris told the police officers when they questioned him, confirmed that Harris was on probation and parole and that his residence was subject to warrantless searches. The other police officer subsequently interviewed Harris' wife, and shortly thereafter conducted a full search of the apartment during which he found drugs and related paraphernalia.

In order for the police to search a parolee's residence based on his parolee status, they must have probable cause to believe that he lives at the residence they intend to search. *United States v. Grandberry*, 730 F.3d 968, 973 (9th Cir. 2013). Harris argues that the apartment was his wife's, from whom he had been separated, and that the police did not have probable cause to believe that he lived there, rendering the search unconstitutional.

During the police officer's interview of Harris' wife, she told them that while she and Harris had been separated for the past several months, they were in

6

the process of reconciling their relationship. She further informed the police officer that Harris had a key to the apartment and had slept there every night for the past two weeks. The police therefore had probable cause to believe that Harris lived at the apartment, making the police's full search, standing alone, constitutional. *See Grandberry*, 730 F.3d at 976.

However, because we have determined that the police's initial entry and search were unconstitutional, the government has the burden of demonstrating that the evidence obtained during the parole search was not fatally flawed as fruit of the poisonous tree. *Alderman v. United States*, 394 U.S. 165, 183 (1969). There are two exceptions to the fruit of the poisonous tree doctrine under which the evidence might be admissible: (1) the 'inevitable discovery' exception, and (2) the 'attenuated basis exception.' *See United States v. Smith*, 155 F.3d 1051, 1060 (9th Cir. 1998) (quoting *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989)). These exceptions, while distinct, "converge to an extent, as in each case '[t]he core inquiry is whether the police would have discovered the evidence if the misconduct had not occurred.'" *Ramirez-Sandoval*, 872 F.2d at 1396 (quoting *United States v. Namer*, 835 F.2d 1084, 1087 (5th Cir. 1988)).

Under the attenuated basis exception, the government can admit evidence when "the relationship between the unlawful search or seizure and the challenged

evidence becomes sufficiently weak to dissipate any taint resulting from the original illegality." *Smith*, 155 F.3d at 1060; *see also Murray v. United States*, 487 U.S. 533, 536-37 (1988). When the government is able to demonstrate that the police would have uncovered the challenged evidence notwithstanding the illegal search, we have held that the challenged evidence is sufficiently far from the tainted search to be admissible. *United States v. McClendon*, 713 F.3d 1211, 1217-1218 (9th Cir. 2013) (holding that evidence obtained following the police's unconstitutional search of the defendant's backpack, which was not with the defendant at the time of the search and in which the police found a sawed-off shotgun, was sufficiently far from the unconstitutional search because the challenged evidence was obtained as a result of the police's decision to pursue the defendant, a decision they would have made even absent finding the sawed-off shotgun because the defendant was a person of interest in their underlying investigation); *see Smith*, 155 F.3d at 1062-63 (holding that evidence obtained following an unconstitutionally intercepted voicemail message was sufficiently far from the initial illegality because the message was merely a lead in the investigation and did not "significantly direct" the police to the discovery of the challenged evidence).

Under the inevitable discovery doctrine, "if, 'by following routine procedures, the police would inevitably have uncovered the [challenged] evidence,' then that evidence will not be suppressed despite any constitutional violation." *United States v. Young*, 573 F.3d 711, 721 (9th Cir. 2009) (quoting *Ramirez-Sandoval*, 872 F.2d at 1399); *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986) (holding that the police's potentially unconstitutional search incident to the defendant's arrest did not affect the challenged evidence's admissibility because the police would have found the evidence, which was contained in the defendant's garment bag, while taking inventory of the defendant's belongings and booking him in conjunction with his arrest for the underlying incident); *United States v. Lang*, 149 F.3d 1044, 1047-48 (9th Cir. 1998) (holding that the defendant's unconstitutionally obtained statements to the police telling them that narcotics were located in the hood of his truck did not render the narcotics inadmissible because the police were trained to look under the hoods of vehicles when searching for drugs and therefore would have found them even had the defendant not directed them to look under the hood).

Applying the attenuated basis and inevitable discovery doctrines to this case, the district court should consider whether the police would have interviewed Harris and his wife following the 911 call about the underlying domestic violence

incident, thus learning the same information concerning Harris' parole status and place of residence. The district court should also determine whether the police would have conducted a sweep or search of the apartment after learning that Harris' residence was subject to warrantless searches, even if they had not discovered the cocaine in the kitchen. The district court should make these determinations following an evidentiary hearing. *See, e.g., United States v. Duran-Orozco*, 192 F.3d 1277, 1281 (9th Cir. 1999) (remanding the case to the district court for an evidentiary hearing to determine whether information police obtained during their first unconstitutional search tainted evidence obtained during the subsequent search under the fruit of the poisonous tree doctrine).

## III.

Harris also challenges the district court's decision admitting his post-arrest statements demonstrating that he had previously dealt drugs under Federal Rules of Evidence 404(b) and 403. Harris argues that his statements constituted impermissible propensity evidence and should have been excluded. The district court instructed the jury that evidence of Harris' prior bad acts was admissible only to establish intent, knowledge, and absence of mistake.

This court has "consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent

[and] knowledge . . . in prosecutions for intent to distribute narcotics." *United States v. Mehrmanesh*, 689 F.2d 822, 832 (9th Cir. 1982). Harris' defense was that he was not a drug dealer, and that he was unaware that there were drugs in his wife's apartment. Harris' statements indicating that he had previously sold drugs were therefore probative of whether he was in fact aware that there were drugs in the apartment and whether he intended to sell these drugs. *See id*.

Harris also argues that the statements were more prejudicial than probative. This court has held that provided the district court issued a limiting instruction guiding the jury's discretion concerning prior bad acts evidence, *id*., and provided the bad acts evidence is not redundant, evidence of prior possession or sale of narcotics is not unduly prejudicial under Rule 403, *U.S. v. Curtain*, 489 F.3d 935, 958 (9th Cir. 2007). Here the district court issued a limiting instruction and Harris' statements were not redundant. Therefore, the district court did not abuse its discretion in admitting the statements under Rules 403 and 404(b).

Harris' statements were not relevant to show absence of mistake because he did not argue that he was mistaken in any respect, and evidence of prior drug dealing activity is of "minimal probative value" when the purpose for which it is admitted is not in issue at trial. *United States v. Vavages*, 151 F.3d 1185, 1193 (9th Cir. 1998). However, any error in admitting the statements for this additional

11

purpose was harmless because the statements were properly admitted to demonstrate Harris' intent and knowledge, thus the jury would have heard the statements for these legitimate purposes, and their admission for an additional purpose uncontested at trial would "more probabl[y] than not" have left the jury's verdict unaffected. *United States v. Ramirez-Robles*, 386 F.3d 1234, 1244 (9th Cir. 2004).

Harris also argues that the district court erred in failing to recite its reasons for admitting the evidence under Rules 404(b) and 403. Even if this were the case, because admission of the statements was proper for at least two reasons cited by the district court in its instructions to the jury, the court's error was harmless. *See id*.

**REMANDED.**

_United States v Harris,_     15-10023

Berzon, J., concurring:

I would assume—as may well be the case—that the officers' warrantless initial entry and first protective sweep of the apartment were justified under the exigency or emergency exception. I agree, however, that the second search of the kitchen was not "reasonable to meet the need" of protecting the officers or others from immediate harm, and thus was in violation of the Fourth Amendment. _United States v. Snipe_, 515 F.3d 947, 952 (9th Cir. 2008).

On remand to the district court for consideration of whether the parole search was fatally tainted as fruit of the poisonous tree, it will not matter whether the constitutional violation occurred at the initial entry or the second search of the kitchen. Nothing happened between the initial entry and the search of the kitchen to give the officers more or less reason to believe Harris lived there. I therefore concur in all of the memorandum disposition except for those portions that discuss the initial entry.

United States v. Harris, 15-10023

WALLACE, Senior Circuit Judge, dissenting:

Judge Berzon assumes and I would hold that the initial entry and protective sweep of the apartment met the requirements of the exigency exception to the Fourth Amendment, but I dissent with the majority's holding that a remand to the District Court is necessary to determine whether the results of the entire home search, following discovery of cocaine in plain view, are fruits of the poisonous tree. I would not remand to the district court because I do not think the tree was poisoned. Indeed, only Judge Noonan believes there was a constitutional violation due to the officers' original entry.

The police responded to a 911 call reporting that Harris and his wife were arguing in the building's parking lot and that Harris dragged her away by the hair. En route, the police received an update that loud shouting was continuing from their apartment. When the two officers knocked at Harris's front door, they saw a man glance furtively through the blinds one foot away from the door, and then 15 to 20 seconds passed with no answer. Only when they knocked again did Harris's wife answer the door, and the officers entered. Based on the 911 report and the delay in answering the door, the officers properly entered the apartment under the exigency exception to the Fourth Amendment. *See United States v. Snipe*, 515 F.3d 947, 952 & n. 6 (9th Cir. 2008) (police need not witness ongoing violence

before responding to an emergency under the emergency exception to a warrant requirement).

The exigency exception extends to the police's second search of the kitchen to follow up on the loud noise heard while Harris was crouching by the stove. Though handcuffed, Harris had refused to cooperate with the officers' requests to sit down so far, and was clearly agitated and antagonistic toward the officers. The officer had a right to conduct a targeted search near the stove to determine that no danger related to the loud noise was present, and could only safely do so when Harris was handcuffed. Even then, Harris tried to flee the apartment and had to be chased and taken down in the doorway by one of the officers.

I agree with Judge Noonan that the police had probable cause to believe that Harris lived at the apartment, and thus the full search of the apartment following the initial protective sweep was also constitutional. I would affirm because no Fourth Amendment violation occurred where the officers lawfully entered and searched the apartment due to exigent circumstances and Harris's progressing suspicious behavior.