**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10505 |
| Plaintiff - Appellee, | D.C. No. 1:10-cr-00063-FMTG-1 |
| v. | |
| EDDIE PABLO PAULINO, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge, Presiding

Argued and Submitted October 18, 2012
Honolulu, Hawaii

Before: REINHARDT, THOMAS, and PAEZ, Circuit Judges.

Eddie Paulino appeals his conviction and sentence for attempted possession

of methamphetamine hydrochloride with intent to distribute in violation of 21

U.S.C. § 841(a)(1). We affirm. Because the parties are familiar with the history of

the case, we need not recount it here.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

I

The district court did not err in denying Paulino's motions to suppress evidence based on its finding that exigent circumstances justified law enforcement officers' warrantless entry of his residence. Exigent circumstances justify a warrantless entry when "officers, acting on probable cause and in good faith, reasonably believe from the totality of the circumstances that . . . evidence or contraband will imminently be destroyed . . . ." *United States v. Ojeda*, 276 F.3d 486, 488 (9th Cir. 2002) (internal quotation marks omitted). "The government bears the burden of showing specific and articulable facts to justify the finding of exigent circumstances." *Id.*

Here, the district court properly determined that the officers had probable cause to believe the package of sham methamphetamine was in Paulino's residence. The officers saw Paulino leave with the package, followed him as he drove with the package, and, after losing visual contact for several minutes, saw that Paulino's vehicle was parked in front of his house. Under these circumstances, the officers had probable cause to believe that evidence was in Paulino's residence. *See United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002) (sustaining a warrantless search under similar facts).

Paulino attempts to distinguish *Alaimalo* by pointing out that here, unlike in *Alaimalo*, the officers did not inspect Paulino's vehicle or the surrounding area for the package, and did not actually see Paulino inside the house until they entered. However, the district court need only have found that there was "a fair probability that contraband or evidence of a crime [would] be found" in the house. *United States v. Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The district court also properly determined that the government satisfied its burden of "showing specific and articulable facts to justify the finding of exigent circumstances." *Ojeda*, 276 F.3d at 488. An officer testified that, in his experience, suspects who open a package containing a breach-detection device will see the device, realize they are under police surveillance, and then try to destroy whatever evidence is inside the package. Because the breach-detection device indicated that the package had been opened only two to five minutes after the suspects arrived at the residence, the officers did not have enough time to secure a warrant before whoever opened the package attempted to destroy the package's contents or any other evidence of crime in the home. Thus, the district court correctly concluded that there were specific and articulable facts justifying the officers' warrantless entry of Paulino's residence to secure the evidence.

3

Finally, there is nothing in the record to contradict the district court's finding that the officers in this case acted in good faith, as required by *Ojeda*. 276 F.3d at 488. Once the officers had secured the evidence, they exited the house with Paulino and sought Paulino's consent to conduct a search of the house, demonstrating their recognition that their authority to enter the house had lapsed once the evidence was secure.

Paulino argues that even if there were exigent circumstances, the warrantless entry of his house was still not justified because any exigency that existed was created by the officers. A police-created exigency invalidates a warrantless entry where officers create the exigency by "engaging or threatening to engage in conduct that violates the Fourth Amendment." *Kentucky v. King*, 131 S. Ct. 1849, 1858 (2011). Here, however, the exigency was created by the triggering of the breach-detection device and the concomitant danger of evidence destruction, not the officers' allegedly false announcement that they had a valid search warrant. *See id.* at 1863 (an announcement of entry did not create the exigency because it was made after the officers determined that the occupants of an apartment were possibly acting to destroy evidence). Therefore, the officers' conduct at Paulino's door did not negate their justification to enter without a warrant. Given the

exigency, the officers were excused from compliance with 18 U.S.C. § 3109. *United States v. Reilly*, 224 F.3d 986, 991 (9th Cir. 2000).

II

The district court did not err in denying Paulino's motions for judgment of acquittal under Federal Rule of Criminal Procedure 29.

Contrary to Paulino's argument, the government was not required to produce direct evidence of his knowledge and intent with regard to the methamphetamine in the package. Rather, the government was allowed to and did use circumstantial evidence to prove the essential elements of knowledge and intent, *United States v. Santos*, 527 F.3d 1003, 1009 (9th Cir. 2008), and it provided enough. A co-defendant testified that he and Paulino received regular shipments of methamphetamine; that Paulino was tracking the package; that they both had received word that a drug dog had alerted to the package at the post office; and that Paulino acted immediately to destroy the package's contents when he realized it was wired. An officer testified that Paulino's hands were covered in clue spray, and that upon entering Paulino's residence, he saw Paulino standing at the threshold of the bathroom, with some of the package's contents strewn on the bathroom floor and the toilet running. The officer and the government's expert

witness testified about the large amount and high value of the methamphetamine in the package.

Construed in the light most favorable to the government, there is adequate evidence to allow a rational jury to find the essential elements of the crime under 21 U.S.C. § 841(a)(1) beyond a reasonable doubt. *See United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (laying out this Court's two-part test for reviewing a denial of a motion under Rule 29).

The district court also did not err in determining that Paulino's knowledge of the exact drug quantity was not an essential element of the crime. Paulino conflates the meaning of "essential elements" of a crime with the meaning of "functional equivalents" of elements for *Apprendi* purposes. *United States v. Toliver*, 351 F.3d 423, 430-31 (9th Cir. 2003), *abrogated on other grounds by Blakely v. Washington*, 542 U.S. 296 (2004). Here, Paulino's knowledge of the quantity of methamphetamine in the package was a "functional equivalent" of an element because it had the potential to increase the statutory maximum sentence. *Toliver*, 351 F.3d at 430. It was not an essential element of the offense under § 841(a)(1). Thus, even if the government did fail to prove Paulino's knowledge of the drug quantity, this failure would not mean that Paulino was entitled to outright acquittal, but only that he was entitled to a lesser sentence. *Id.* at 431.

6

Paulino contends that the government elevated drug quantity to the status of an essential element when it alleged in Count IV that Paulino intended to possess 109.5 grams of methamphetamine. Although the government did make some comments before the district court that suggested it believed it needed to prove this precise intent, it is § 841(a)(1), and not the parties, that determines the essential elements of the offense. *Id.* ("[S]imply because the government included drug quantity and type allegations in Count One, that did not mean that those factual allegations must be treated as formal elements of the basic offense under section 841(a)(1)."). Thus, any failure to prove that Paulino knew the exact quantity of methamphetamine in the package would not entitle him to judgment of acquittal under Rule 29.

### III

The district court did not abuse its discretion in denying Paulino's motion for a new trial under Federal Rule of Criminal Procedure 33. The district court did not apply the wrong legal standard to Paulino's Rule 33 motion. The district court's order makes clear that it understood its discretion to weigh the evidence and grant a new trial in the "interest of justice." Fed. R. Crim. P. 33(a); *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992) (describing standard).

7

The district court's decision also had sufficient support in the evidentiary record. Therefore, its decision was not "illogical, implausible, or without support in inference that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009).

IV

The district court did not err in sentencing Paulino to 120 months incarceration according to a U.S. Sentencing Guideline base level that was premised on the jury's finding that Paulino intended to possess 50 grams or more of methamphetamine. Because drug quantity is a factual determination that increases the maximum statutory sentence for a crime under 21 U.S.C. § 841(b)(1)(A), it must be submitted to a jury and proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). In reviewing a challenge to the sufficiency of the evidence supporting a drug quantity determination, we view the evidence in the light most favorable to the government and must affirm the jury's finding so long as any rational trier of fact could have found the facts beyond a reasonable doubt. *See Nevils*, 598 F.3d at 1163-64.

In this case, there was sufficient evidence to support the jury's finding that Paulino knowingly and intentionally attempted to possess 109.5 grams of methamphetamine, and so the district court did not err in applying a sentencing

8

base level premised on a quantity of 50 grams or more of methamphetamine. A witness testified that he and Paulino received monthly shipments of methamphetamine, with each package containing between three and four ounces of methamphetamine. Three ounces is 85.0486 grams, and four ounces is 113.398 grams. Construing this testimony in favor of the government, a rational jury could have inferred from it that Paulino knew the package would contain 109.5 grams of methamphetamine.

Paulino argues that the district court made a specific legal finding that there was insufficient evidence to sustain the jury's finding of drug quantity knowledge. The district court made no such finding, however. In the passage to which Paulino refers, the the district court was only explaining that, for the purposes of finding evidence sufficient to convict Paulino of the basic offense under § 841(a)(1), it was irrelevant whether Paulino knew the specific drug quantity.

Under *Nevils* we must construe the evidence in favor of the government. So construed, the evidence supports the jury's finding of drug quantity, and so the district court did not err in imposing a sentence based on that finding.

**AFFIRMED**.