**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jose Reyes CHAVEZ, Defendant–Appellant.**

**No. 07CA2136.**

Colorado Court of Appeals, Div. IV.

Feb. 18, 2010.

John W. Suthers, Attorney General, John J. Fuerst, III, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CONNELLY.

Defendant, Jose Reyes Chavez, was convicted after a jury trial of possessing a dangerous weapon (a sawed-off shotgun) and was sentenced to probation. His appeal raises Fourth Amendment challenges to police officers' entry of his home, which led to their ultimate discovery of the shotgun. We affirm.

## I. Background

Defendant and a woman lived with the woman's two children. One night, around 9:30 p.m., the woman's daughter ran from her family home to a neighbor's home and called 911. The daughter reported that her mother and her mother's boyfriend were involved in a physical altercation. She believed weapons were in the home.

Three police officers responded, in separate cars, within minutes of the 911 call.

The home was dark. The officers pounded repeatedly on the front door but received no response.

An officer went behind the home and saw the back door ajar. He pressed the door fully open, announced "Police Department," and entered with his gun drawn. After seeing the woman in the kitchen, the officer ordered any others inside the house to identify themselves. Defendant then came forward, unarmed, and the officer put his own gun back in its holster.

One officer spoke with the woman in the kitchen while another spoke with defendant in the living room. The couple separately admitted they had been arguing and that it had turned physical. The officers observed light red marks on the woman's neck and scratches on defendant's face.

A third officer did a quick security sweep of the home. There was testimony at the suppression hearing that the woman had consented to this officer's search of the home for other people. The officer spoke with the woman's teenaged son, who was upstairs; the son said he had heard the disturbance but remained away. The officer also did a sweep downstairs to make sure no one else was in the home. In plain view, through an open closet door in the main downstairs bedroom, the officer saw shotgun shells and some bullets.

The officer separately asked defendant and the woman whether any weapons were inside the home. Defendant said there were not but the woman said there was a gun underneath the mattress in their bedroom. She gave the officer permission to retrieve it.

The officer found the sawed-off shotgun exactly where the woman said it was. He then went back to defendant, who admitted the gun was his and said a friend had given it to him. Defendant also said there was another gun at the foot of the bed. The officers ultimately took both guns out of the residence; one later testified that "anytime we investigate domestic violence, weapons are removed from the residence for safe keeping, either for release or to hold, depending on whether the charges are [filed] or not."

After being charged with possession of a dangerous weapon, defendant moved to suppress the sawed-off shotgun. He contended the officers' entry and search of the home had violated the Fourth Amendment. Defendant also denied that the woman had consented to retrieval of the gun and claimed he had objected to it. Five witnesses—the three officers, the woman, and defendant—testified at the suppression hearing.

The district court denied the motion to suppress. It issued oral findings and conclusions. On points where the testimony of the officers had differed from that of defendant or the woman, the court credited the officers' testimony.

The court ruled the initial entry of the home was reasonable. It explained that the officers knew there had been a 911 call from the woman's daughter reporting domestic violence that was sufficiently serious to cause her to flee the home at night. The court also noted that the officers' concerns were "heightened" when they arrived minutes later to a dark house in which no one responded to their repeated knocking. It held the officers did not act unreasonably in entering through the slightly opened back door.

The court also ruled that the officers' actions once inside the house were reasonable. It found that the woman had voluntarily consented to the officers' locating and retrieving the shotgun. The court did not credit defendant's claim that he had objected to the search. It therefore declined to suppress the shotgun.

## II. Discussion

Defendant contends the police violated the Fourth Amendment by entering the home, thereby tainting the woman's consent and requiring suppression of the shotgun. We review this constitutional challenge de novo but accept the trial court's factual findings because they were not clearly erroneous. *See People v. Davis*, 187 P.3d 562, 563–64 (Colo.2008).

### A. Entering the Home

■ The "ultimate touchstone of the Fourth Amendment is 'reasonableness.' "

*Brigham City v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). Police are always prohibited from entering homes unreasonably, and usually—indeed, "presumptively"—warrantless entries are unreasonable. *Groh v. Ramirez,* 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). But "that presumption can be overcome." *Michigan v. Fisher,* 558 U.S. ——, 130 S.Ct. 546, 548, 175 L.Ed.2d 410 (2009) (per curiam).

■ A warrantless entry may be justified by investigative exigencies or emergencies. *Brigham City,* 547 U.S. at 403, 126 S.Ct. 1943. The "exigent circumstances" and "emergency" exceptions are technically distinct: for example, the former requires traditional probable cause while the latter requires an objectively reasonable basis for believing immediate aid is required inside. *See United States v. Snipe,* 515 F.3d 947, 951–53 (9th Cir.2008); *United States v. Najar,* 451 F.3d 710, 718 (10th Cir.2006); *People v. Allison,* 86 P.3d 421, 426–27 (Colo.2004). Ultimately, however, "[t] he 'emergency doctrine' exception to the warrant requirement is but a specific example of the exigent circumstances doctrine." *People v. Thompson,* 770 P.2d 1282, 1285 (Colo.1989). And "[i]n domestic violence cases, the distinction between the two doctrines often collapses because the same facts that give rise to the exigency also provide probable cause of a suspected crime." Amanda Jane Proctor, *Breaking into the Marital Home to Break Up Domestic Violence: Fourth Amendment Analysis of "Disputed Permission",* 17 Am. U.J. Gender Soc. Pol'y & Law 139, 142 (2009).

■ In evaluating reasonableness under the Fourth Amendment, courts have " 'accorded great latitude' " to officers responding to emergency reports of ongoing domestic violence. *United States v. Brooks,* 367 F.3d 1128, 1136 (9th Cir.2004) (quoting *Tierney v. Davidson,* 133 F.3d 189, 197 (2d Cir.1998)). Case law recognizes that "[w]hen officers respond to a domestic abuse call, they understand that 'violence may be lurking and explode with little warning.' " *United States v. Martinez,* 406 F.3d 1160, 1164 (9th Cir.2005) (quoting *Fletcher v. Town of Clinton,* 196 F.3d 41, 50 (1st Cir.1999)). Another reason "[d]eference" to officers' "[o]n the spot reasonable judgments" is "particularly warranted in domestic disputes" is that "[t]he signs of danger may be masked" by a battered victim's fear or dependence. *Fletcher,* 196 F.3d at 50.

In *Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), the Supreme Court went out of its way to emphasize police officers' ability to protect victims of domestic abuse. The issue there was whether one cotenant's consent could justify a search over the objection of another physically present cotenant; the Court held it could not. *Id.* at 106, 126 S.Ct. 1515. The majority recognized the seriousness of the problem of domestic abuse, *id.* at 117, 126 S.Ct. 1515 (citing studies), and it took pains to note that "this case has no bearing on the capacity of the police to protect domestic victims." *Id.* at 118, 126 S.Ct. 1515. It wrote that "[n]o question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence," because "so long as they have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering ... to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected." *Id.*

■ Defendant argues—and we agree— "there is no 'domestic violence' exception to the Fourth Amendment." *See United States v. Black,* 482 F.3d 1035, 1040 (9th Cir.2007) ("we have stopped short of holding that 'domestic abuse cases create a per se exigent need for warrantless entry' ") (quoting *Brooks,* 367 F.3d at 1136); *United States v. Davis,* 290 F.3d 1239, 1244 (10th Cir.2002) (declining to "grant[ ] unfettered permission to officers to enter homes, based only upon a general assumption domestic calls are *always* dangerous") (emphasis in original). But in reviewing police responses to emergency reports of ongoing domestic violence, courts must be cognizant of the difficulties such cases present for officers.

We conclude the officers reasonably entered defendant's home. The daughter's report of a physical altercation involving her mother and defendant established probable cause that a domestic violence crime had occurred or was occurring in the home. The information from the daughter—an identified "citizen-witness" with personal knowledge of the reported facts and no known reason to fabricate—was presumptively reliable. *People v. Fortune*, 930 P.2d 1341, 1345 (Colo. 1997); *see* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.4, at 219–40 (4th ed.2004).

■ The circumstances confronting the officers upon learning of the daughter's report were exigent. True 911 calls, by their very nature, involve emergencies. *See United States v. Richardson*, 208 F.3d 626, 630 (7th Cir.2000) ("911 calls reporting an emergency can be enough to support warrantless searches under the exigent circumstances exception, particularly where, as here, the caller identified himself"). The apparent seriousness of the situation was communicated not just by the daughter's words but by her actions: she had, after all, felt compelled to flee her home at night to make the call from the safety of a neighbor's house. And, while there was no indication that weapons had been used, the daughter reported that weapons were inside the home.

The apparent exigencies were heightened when the officers arrived. The home was dark, and no one answered repeated knocks on the front door—even though the daughter had reported a physical altercation occurring inside just minutes earlier.

It was reasonable, therefore, for the officers to proceed to the back door of the darkened home when their repeated knocks on the front door went unanswered. And when they saw the door slightly ajar, it was reasonable for them to enter and announce themselves.

In challenging the reasonableness of the entry, defendant relies heavily upon the Tenth Circuit's decision in *Davis* and our supreme court's decision in *People v. Pate*, 71 P.3d 1005 (Colo.2003). Both cases are distinguishable from this one.

The report of domestic violence in *Davis*—a generalized "dispatcher's report of a possible domestic disturbance," 290 F.3d at 1240—was far less specific than here; as the Ninth Circuit later noted, the police in *Davis* apparently had "receiv[ed] a vague and anonymous call about a domestic dispute" and "there were no corroborating facts ... suggesting that anyone was in danger." *Brooks*, 367 F.3d at 1135 n. 8. Moreover, Davis and ultimately his wife came to the front door, the wife "appeared without any signs of harm," both stepped outside at the officers' request, and both objected to officers entering their home. 290 F.3d at 1240–44. Here, in contrast, the officers had no way to interview everyone involved or to evaluate the dangerousness of the situation. The Tenth Circuit's holding that the entry of the home was unreasonable under the very different facts of *Davis* has no application to our case.

*Pate* also is distinguishable. The police there responded to a 911 call reporting a possible burglary—at a different address than the residence ultimately entered—and found no evidence of a burglary there. 71 P.3d at 1007–08. They then entered a different residence. *Id.* at 1008–09. The court, ruling that officers acted on mere suspicions not rising to the level of probable cause, held this entry unjustified by the exigent circumstances or emergency aid exceptions. *Id.* at 1012–14. Here, in contrast, the officers reasonably relied on first-hand information reported by a fearful resident of the home they entered.

### B. The Woman's Consent to the Search

Defendant does not challenge the district court's finding that the woman told the officers where to find the shotgun and voluntarily consented to their retrieving it. He contends only that this consent was the fruit of prior Fourth Amendment violations. *See generally Brown v. Illinois*, 422 U.S. 590, 601–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Our holding that the police properly entered the home vitiates this contention to the extent it is based on the entry.

Defendant also suggests the woman's consent was tainted by an officer's impermissible sweep of the home, during which the officer

observed shotgun shells. The district court ruled that it was reasonable for the officer to do a quick sweep of the house to ensure that no one inside was injured or had a weapon.

We express no opinion on the legality of the sweep. Defendant has focused almost exclusively on the initial entry, while offering little or no analysis of the sweep independent of the entry itself. Among other things, defendant has never responded to the People's contention (citing suppression hearing testimony) that the woman consented to the officer's sweeping the house to look for other persons. Accordingly, we decline to consider whether the sweep was improper and, if so, whether it tainted the woman's consent to search for the shotgun. *See People v. Wallin*, 167 P.3d 183, 187 (Colo.App.2007) (declining to consider issues presented "in a perfunctory or conclusory manner") (citing *People v. Venzor*, 121 P.3d 260, 264 (Colo. App.2005), and quoting a similar point made in *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)).

### III. Conclusion

The judgment is affirmed.

Judge WEBB and Judge TERRY concur.